AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
10/13/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLO___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
OCT 13 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___Cd___ DEPUTY

United States of America

v.

GUY ARMANDO LEONARD,

Defendant(s)

Case No.   2:21-mj-04701

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of in the county of Los Angeles in the Central District of California, the defendant(s) violated:

*Code Section*

18 U.S.C. § 922(g); 21 U.S.C. § 841(a)(1)
18 U.S.C. § 924(c)

*Offense Description*

Felon in Possession of a Firearm and Ammunition; Possession with Intent to Distribute Controlled Substances; Possession of a Firearm During and in Relation to or in Furtherance of a Drug Trafficking Crime

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*Complainant's signature*

Tsoler Kojayan, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   10/13/2021

*Judge's signature*

City and state:   Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
*Printed name and title*

AUSA: Solomon Kim

## AFFIDAVIT

I, Tsoler Kojayan, being duly sworn, declare and state as follows:

### PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against GUY ARMANDO LEONARD ("LEONARD") for violations of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition; 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Controlled Substances; and 18 U.S.C. § 924(c): Possession of a Firearm During and in Relation to or in Furtherance of a Drug Trafficking Crime.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### BACKGROUND OF SPECIAL AGENT KOJAYAN

3. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 2010. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to

ii

conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. I am currently assigned to a Criminal Gang Enterprise Squad at the Los Angeles Field Office of the FBI, which investigates criminal gang activity. I am also a member of the FBI Los Angeles Metropolitan Task Force on Violent Gangs, a multi-agency federal, state, and local gang task force.

5. As an SA, I have participated in investigations of various crimes, including assault, murder, gang activity, and firearms and narcotics trafficking. For the past ten years, I have primarily investigated violent street gangs involved in narcotics distribution crimes, gun crimes, racketeering crimes, and criminal conspiracies. I have also investigated the Mexican Mafia ("EME") prison gang -- its crimes, its members, and its associates -- and have interviewed EME-affiliated gang members regarding the organization's structure, rules, goals, and activities.

6. Throughout my investigations, I have used a variety of law enforcement techniques, including physical and electronic surveillance, controlled drug and gun buys, interviews of witnesses and subjects, use of confidential informants, and execution of search warrants. I have also been the affiant in Title III applications, monitored Title III communications, and conducted surveillance in conjunction with wiretap investigations.

7. As an SA, I have received training, both formal and informal, in investigating federal crimes, including federal

narcotic, conspiracy, and racketeering crimes. Throughout my law enforcement career, I have discussed gangs, gang culture, and gang operations with both experienced law enforcement officers and knowledgeable confidential sources.

8. Through my training, experience, and interaction with more experienced federal and state law enforcement officers, and other drug investigators, I have become familiar with the methods employed by drug traffickers, in particular, practices to smuggle, safeguard, transport, and distribute drugs, and to collect and launder drug-related proceeds. These methods include the use of wireless communications technology (such as cellular telephones) to both send text messages and to make voice calls, counter-surveillance, smuggling schemes tied to legitimate businesses, false or fictitious identities, and coded or encrypted communications, in an attempt to avoid detection by law enforcement and to circumvent drug investigations. I know that during the course of these wire and electronic communications, organization members routinely use coded references and/or encryption in an effort to elude law enforcement detection; and that drug traffickers often confine their illegal telephonic communications to well-trusted organizational members and other high-level drug traffickers.

9. Based on my training and experience, I know that persons involved in the illicit distribution of controlled substances often attempt to conceal their identities, as well as the locations at which drug transactions take place. They are also known to have vehicles, properties, utilities, and other

purchases under fictitious names and/or in the names of other individuals to conceal their criminal activities and financial transactions.  I am aware that persons engaged in organized drug distribution and sales maintain contact with individuals from whom they receive and/or to whom they distribute drugs.  I know that in order to do this effectively, these persons maintain continued access to telephone communication, including both voice and text.

## SUMMARY OF PROBABLE CAUSE

10. On or about February 24, 2021, LEONARD was arrested for a robbery that occurred two days prior.  Upon seeing deputies from the Los Angeles County Sheriff's Department ("LASD"), LEONARD ran through the outside of a residence, while holding a black bag, which he subsequently tossed.  A search of area through which LEONARD ran resulted in the location of the black bag which contained a Heckler and Koch firearm, loaded with 11 rounds of ammunition, one of which was in the chamber, and narcotics, including approximately 65.46 grams of Fluorofentanyl, which is a controlled substance and an analogue of fentanyl.  During LEONARD's booking process, LASD also discovered approximately 5.9 grams of methamphetamine on LEONARD's person.

## STATEMENT OF PROBABLE CAUSE

11. Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

### A. February 22, 2021 Robbery and February 24, 2021 Arrest of LEONARD

12. On or about February 22, 2021, LEONARD was identified as a suspect of a robbery, in violation of California Penal Code Section 211, with a firearm. On that day, victim J.L. called 911 to report a robbery. LASD responded to the call. When LASD arrived, J.L. told the deputies that his brother, LEONARD, had pointed a gun at him during an argument in J.L.'s apartment and threatened to "blow" his head off if he contacted the police. LEONARD then left the victim's residence with the victim's bicycle, debit cards, and driver's license. Deputies searched the nearby vicinity for LEONARD, but did not find him.

13. On or about February 24, 2021, LASD Deputy Joseph Gonzales and his partner were patrolling the area of Dicky Street and Cord Avenue in Pico Rivera, CA. Deputy Gonzales observed an individual, later identified as LEONARD, walking and holding a black bag. Based on his conversations with the handling officers of the February 22, 2021 robbery investigation and a safety bulletin related to that robbery that had been circulated previously, the deputy recognized LEONARD. As the deputies continued west on Dicky Street, LEONARD immediately ran away from the deputies through the driveway of a residence,[1] while holding the black bag.

---

[1] The residence is associated with documented Pico Nuevo gang member, R.M., and is a known gang hangout. LEONARD is also a documented Pico Nuevo gang member, with the moniker of "Bubba." The words "Pico Nuevo" are tattooed above his forehead and "Nuevo" on the front side of his neck.

14. At some point during the deputies' pursuit of LEONARD, R.M. came out of the residence and immediately began yelling that he did not do anything and that he did not know what was going on.

15. The deputies contained the area around the residence, and LEONARD was eventually detained on the other side of the residence. When the deputies arrested LEONARD, LEONARD was no longer in possession of the black bag.

### B. Location of the Black Bag, Firearm, and Narcotics

16. Based on Deputy Gonzales's observation of LEONARD running through the driveway of R.M.'s residence, Deputy Gonzales asked R.M. if he could search the outside of R.M.'s residence. R.M. gave the deputies consent to search the perimeter of his house. When the deputies searched the outside of the residence, Deputy Gonzales found the black bag LEONARD had been seen carrying, between the back of the residence's detached garage and the rear wall of the home. Deputy Gonzales saw that the black bag was open and saw a base plate of a firearm magazine, which was later determined to be loaded with ten rounds of ammunition, protruding out of the bag. The deputy also saw a black Heckler and Koch 9mm firearm (later determined to bear serial number 232-018211), which was loaded with one round of ammunition in the chamber, in the bag, along with zip lock baggies, and a "Tylenol" bottle containing a large amount of blue round pills. A lab test conducted by the Drug Enforcement Administration ("DEA") concluded that the pills contained approximately 65.46 grams of Fluorofentanyl. Based on

my training and experience, I know Fluorofentanyl to be a Schedule I controlled substance, and an analogue of fentanyl.

17. A DNA examination conducted by the LASD Scientific Services Bureau concluded that LEONARD's DNA was a contributor to DNA obtained from the firearm.

18. During LEONARD's booking process, LASD located a black elastic bindle tied at one end which contained a crystal-like substance, which was subsequently tested by the DEA and identified as approximately 5.9 grams methamphetamine, on LEONARD's person.

### C. LEONARD's Statements

19. On October 11, 2021, I reviewed some of the jail calls[2] made by LEONARD following his arrest on February 24, 2021. Below are summaries of some of those calls:

    a. On or about February 26, 2021, at approximately 2:36 p.m., LEONARD placed an outgoing call to an unidentified male. During the call, LEONARD said he was arrested for "211, possession with loaded firearm, and possession of narcotics," and said "nothing was found on me." LEONARD said, "tossed, like somewhere behind foo, I don't know where they found it." LEONARD said they "found me blocks away."

---

[2] When using the inmate telephone service, at the beginning of the calls, inmates enter their booking number and a PIN code. A recording is then heard which states telephone calls may be monitored or recorded and prompts the inmates to consent to the monitoring or recording of the call. The recording is repeated several times. All the calls I reviewed were in the English language. They are paraphrased below.

### D. LEONARD's Criminal History

20. On October 7, 2021, I reviewed certified conviction documents for LEONARD and learned that LEONARD has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a. On or about June 4, 2009, a violation of California Penal Code Section 12031(a)(1) - Carrying a Loaded Firearm, in the Superior Court for the State of California, County of Los Angeles, Case Number VA110362;

    b. On or about June 11, 2009, a violation of California Penal Code Section 459 - Burglary, in the Superior Court for the State of California, County of Los Angeles, Case Number VA113984;

    c. On or about May 7, 2013, a violation of California Penal Code Section 594(a) - Vandalism, in the Superior Court for the State of California, County of Los Angeles, Case Number VA127549; and

    d. On or about February 5, 2020, a violation of California Health & Safety Section 11378 - Possession of a Controlled Substance for Sale, in the Superior Court for the State of California, County of Los Angeles, Case Number VA152658.

### E. Interstate Nexus

16. On October 7, 2021, FBI Special Agent Trevor Twitchell, who is a certified ATF Interstate Nexus Expert, examined photographs of the firearm and ammunition discussed

above, and confirmed that the firearm and ammunition were manufactured outside of the State of California.

## CONCLUSION

21. For all of the reasons described above, there is probable cause to believe that LEONARD has violated 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition; 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Controlled Substances; and 18 U.S.C. § 924(c): Possession of a Firearm During and in Relation to or in Furtherance of a Drug Trafficking Crime.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of October, 2021.

THE HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE